FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

FEB 15 2008

Stephan Harris, Clerk
Cheyenne

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| ROBIN L. SCHELLING, <br><br> Plaintiff, <br><br> vs. <br><br> PURE ENERGY SERVICES (USA), INC., <br><br> Defendant. | Case No. 07 - CV - 51 - J |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART AND RESERVING JUDGMENT IN PART**

The above captioned matter comes to the Court on the Motion for Summary Judgment of Defendant, Pure Energy Services (USA), Inc. (Pure) which was filed on October 15, 2007. Plaintiff, Robin L. Schelling, timely filed an Opposition to Summary Judgment on October 29, 2007. Defendant filed a reply on November 5, 2007. After careful consideration of the motions, briefs, oral arguments, governing authorities, and being otherwise fully advised in the premises, the Court **FINDS** and **ORDERS** as follows:

## Introduction

Plaintiff brings claims for violation of the Fair Labor Standards Act (FLSA), breach of contract, and defamation. Specifically, plaintiff worked as an office administrator for defendant from November 1, 2004, until her termination on January 12, 2007. Plaintiff claims defendant violated the FLSA by misclassifying plaintiff as salary exempt from her hire date until October 6, 2006, and failing to provide overtime compensation for all hours worked in excess of forty hours each week. Additionally, plaintiff claims defendant committed a breach of contract by terminating plaintiff's employment without following defendant's three strike discipline policy. Finally, plaintiff alleges defendant has published to third persons, including defendant's current and former employees, statements regarding plaintiff's conduct including statements that plaintiff "was lazy and unfit as an employee." Plaintiff claims these publications are false and defamatory, and caused plaintiff to suffer harm to her reputation, character, and integrity. Plaintiff seeks compensatory and punitive damages, attorney's fees, and costs.

## Factual Background

For purposes of summary judgment, the defendant has agreed to the adoption of plaintiff's facts with only one amendment. The court therefore adopts those facts and others attached to the Motion and Response as set forth below.

Ms. Schelling was hired by Pure on November 1, 2004, as the office administrator for Pure's Evanston, Wyoming field office. She remained in this position until her termination on January 12, 2007. Ms. Schelling claims that she was not provided with a reason for her termination.

During her employment, Ms. Schelling regularly worked office hours at Pure from between 7:30 and 8:00 a.m. to between 4:30 and 5:00 p.m., with a lunch hour. She alleges that she additionally worked 5 to 15 hours a week in excess of the regularly scheduled 40 hours from the time of her hire until the October 6, 2006. On that date, Pure reclassified Ms. Schelling from a salaried employee, exempt from the overtime requirements of the FLSA, to an hourly employee. Ms. Schelling and Pure agree that she was initially misclassified. After the reclassification, she was told by two supervisors, Cindy Rucker and Kelly Ciprick, that any overtime had to be expressly approved. Subsequent to reclassification, she never worked overtime.

Ms. Schelling alleges to have performed work on evenings and on most weekends. Before she was reclassified as an hourly employee, she was issued a "Blackberry" and laptop computer to perform this work. She alleges to have used these and her personal computer to perform work for Pure outside normal office hours. With her personal computer, the Pure issued laptop, and "Blackberry" she contends that she made business-related phone calls, e-

3

mail exchanges, and worked on Pure projects. She also was able to access Pure's "Client Access Network" to perform work to be saved on the Pure network. In addition to work Ms. Schelling alleges to have done at home, she also alleges that she ran errands outside of the office related to her duties.

Ms. Schelling did not maintain records of hours she worked while classified as an exempt employee and Pure did not ask her to or require it. Ms. Schelling admits to taking care of personal business during work hours for five or ten hours a week. (Dep. of Robin Schelling, p. 42). She claims that she always worked additional extra hours to cover the time spent on personal business. *Id.* at 43.

## Standard of Review

"Claims lacking merit may be dealt with through summary judgment" under Rule 56 of the Federal Rules of Civil Procedure. *Swierkiewicz v. Soerma N.A.*, 534 U.S. 506, 514 (2002). A district court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)); *Nelson v. Geringer*, 295 F.3d 1082, 1086 (10th Cir. 2002). "An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant." *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996). That

Case 2:07-cv-00051-ABJ   Document 38   Filed 02/15/08   Page 5 of 19

"genuine" issue of fact is deemed "material" if it "might effect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Dunbar v. Jackson Hole Mountain Resort Corp.*, 392 F.3d 1145, 1147 (10th Cir. 2004).

When applying the aforementioned standards, the Court must, with respect to each motion, "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Schutz v. Thorne*, 415 F.3d 1128, 1132 (10th Cir. 2005). Procedurally, the moving party can carry its initial burden by producing affirmative evidence that negates an essential legal element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy his burden of persuasion at trial. *Trainor v. Apollo Metal Specialities, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).

Once this has occurred, the procedural burden shifts to the party opposing summary judgment, who must go beyond the pleadings and, through the marshaling of admissible evidence, affirmatively establish a genuine issue on the merits of the case. Fed. R. Civ. P. 56(e). The content of this evidence must be admissible in substance if not also in form, for patently irrelevant evidence, inadmissible hearsay and the like is "not suitable grist for the summary judgment mill." *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998) (internal quotations omitted).

At this stage, the nonmovant must do more than simply deny the veracity of

5

everything offered—show more than a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Likewise, "[t]he mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient" to create a genuine dispute of material fact. *Herrick v. Garvey*, 298 F.3d 1184, 1190 (10th Cir. 2002). To avoid summary judgment, the nonmoving party must, in the words of Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party's failure of proof "renders all other facts immaterial," creating no genuine issue of fact and entitling the moving party to the summary judgment it sought. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## Analysis

The 29 U.S.C. § 207(a) provides, in part, that for nonexempt employees,

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

*Id.* In this case, it is undisputed that plaintiff was a nonexempt employee entitled to any unpaid overtime compensation. "An employee who brings suit . . . for unpaid minimum

6

wages or unpaid overtime compensation . . . has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87, 66 S. Ct. 1187, 1192 (1946).

In determining the proper standard for the employee to meet in carrying out its burden of proof, Supreme Court noted in *Anderson* that,

> [t]he remedial nature of this statute and the great public policy that it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the record may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof.

> When the employer has kept proper and accurate records the employee may properly discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that

> work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687-688.

The Court explains that no injustice results from awarding approximate damages by stating:

> The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of § 11(c) . . . Nor is such a result to be condemned by the rule that precludes recovery of uncertain and speculative damages. That rule applies only to situations where the fact of damages is itself uncertain. But here we are assuming that the employee has proved that he has proved that he has performed work and has not been paid in accordance with the statute. The damage is therefore certain. The uncertainty lies only in the amount of damages arising from the statutory violation by the employer.

*Id.*

The Tenth Circuit summarized these concepts in the case of *Handler v. Thrasher*, 191 F.2d 120, 122 (10th Cir. 1951):

> It is incumbent upon the employee to show by a fair preponderance of the evidence not only that he worked in excess of the statutory work week, but the actual number of hours worked in excess thereof. But, where he proves that he has in fact performed work for which he has not been compensated, and

8

>produces evidence to show the amount and extent of that work, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed, or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award compensation to the appellee, even though the result be only approximate. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515; *Joseph v. Ray*, 10 Cir., 130 F.2d 409; *George Lawley & Son Corp. v. South*, 1 Cir., 140 F.2d 439, 151 A.L.R. 1081; *Porter v. Poindexter*, 10 Cir., 158 F.2d 759; *DePasquale v. Williams-Bauer Corp.*, 2 Cir., 151 F.2d 578; *Pioneer Corp. v. Kimsey*, 196 Okl. 89, 162 P.2d 1000.

*Id.*

The instant motion asks the Court to grant summary judgment against Ms. Schelling for failure to establish by a preponderance of the evidence that she "in fact performed work for which [s]he has not been compensated." *Id.* Defendant Pure asserts that Ms. Schelling's "primary proof that she performed work for which she was improperly compensated and the amount and extent of that work, is her self-serving statement that 'on average she worked 5 or 15 hours overtime per week.'"(Def.'s Br. in Supp. of Summ. J. p. 8). Ms. Schelling's deposition sheds some light on this issue.

>Q. In this case you're alleging an FLSA violation for non-payment of overtime. Correct?
>A. Correct?
>Q. How much do you - - are you asserting that you're entitled to as far as lost - - or non-payment of overtime?

A. Are you - - I don't understand. Hourly? Do you want hours?

Q. Let's start with hours.

A. On average, five to 15 hours per week.

Q. From the beginning of your employment?

A. Yes. Until October of 2006.

Q. After October of 2006, are claiming any non-payment of overtime?

A. No.

Q. You didn't work any overtime after October of 2006?

A. No.

Q. Is that - - am I correct?

A. That is correct, yes.

Q. Thank you.

In October of 2006, you became hourly. Correct?

A. That is correct, yes.

Q. And you started doing time sheets. Correct?

A. Correct.

Q. Prior to October of 2006, did you maintain any type of time sheet at all?

A. No.

Q. Can you give me any specific dates or pay periods that you know you worked overtime that week?

A. No.

Q. Is there any way you could find that out?

A. Yes.

Q. How?

A. Through e-mails. Communication.

10

> Q. Okay.
>
> Explain that to me. How do you determine the overtime by looking at e-mails?
>
> A. There's specific projects that I saved on my e-mail, and communications before and after. Blackberry use. Cell phone use. Incoming calls. Transmission dates through the Can system.

(Dep. of Robin Schelling p. 24-27).

Pure contends that Ms. Schelling's phone and email records do not justify her overtime claims. Attached to Pure's Br. in Supp. is App. B which contains the deposition of Cindy Rucker, Pure's Human Resources Manager. Ms. Rucker stated

> Q. Did you review Robin's emails?
>
> A. What do mean review? Read them or –
>
> Q. Did you go and look and see what was in her in box and her out box and sent files?
>
> A. I did review them.
>
> Q. Somebody created after Robin departed, apparently, a folder in her Outlook file called After Hours and a number of e-mails were moved to that folder. Do you know who did that?
>
> A. I did.
>
> Q. And what was your purpose for doing that?
>
> A. To determine if there were e-mails sent after hours and the nature of those e-mails.
>
> Q. And the files, I believe, only go back to – the e-mails only go back to January of 2006. Do you know why that is the situation since the e-mail program apparently dates back earlier than January of 2006?
>
> A. I do not.

11

Q. Can I correctly assume you did not delete any e-mails?

A. I did not.

Q. You simply moved – did you copy or move?

A. Moved them.

Q. And what conclusions did you draw from reading the after-hours e-mails?

A. If I recall my conclusions were that they were very minor, some responses to other people's e-mails via the BlackBerry, some personal after hours. That's about all I can recall.

Q. Did you look at the BlackBerry records?

A. Yes. Yes.

Q. What BlackBerry records did you look at?

A. The phone records.

Q. And that would – you're talking about the what the service provider charged for the usage –

A. Correct.

Q. - - of the airways correct?

A. Correct.

Q. And that would five you the number - - I mean that's the telephone part of the BlackBerry, correct - -

A. Correct.

Q. - - we're talking about?

A. Correct.

Q. What did you conclude from reviewing those as to whether she was making business-related calls after hours?

A. I think we concluded that very few after-hours phone calls, and I believe there were quite a few or at least some that were personal after-hours calls.

12

(Dep. of Cindy Rucker p. 54-57).

Pure argues and attempts to show through evidence that the phone and email records reflect a *de minimus* amount of work outside of regular office hours. The problem, according to Pure, is that some outside of regular hours work does not prove a claim for overtime because the underlying necessary 40 hour workweek has not been proven. Ms. Schelling's own statement acknowledges a potential workweek during normal hours of only 30 to 35 hours.

> Q. And on average, how much time did you spend on personal business during the week? During the work hours?
> A. Maybe five, ten hours a week. Not constant. On an occasion.
> Q. So if we see e-mails where you are doing personal business, you don't expect to be compensated for that time, do you?
> A. No.

(Dep. of Robin Schelling p. 24-27). Therefore, Ms. Schelling must show work outside normal hours on those weeks of at least 5 to 10 hours to make a showing of any unpaid compensable overtime.

In looking at Pure's Motion to Dismiss Ms. Schelling's overtime claims, the Court is constrained by the standard of review necessary for summary judgment. In this case, Pure, the moving party, has produced affirmative evidence that establishes that Ms. Schelling lacks

the quantum of evidence needed to satisfy her burden of persuasion at trial. *See Trainor v. Apollo Metal Specialities, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Pure has met its initial burden. Therefore the procedural burden shifts to Ms. Schelling, who must go beyond the pleadings and, through the marshaling of admissible evidence, affirmatively establish a genuine issue on the merits of the case. Fed. R. Civ. P. 56(e). The content of this evidence must be admissible in substance if not also in form, for patently irrelevant evidence, inadmissible hearsay and the like is "not suitable grist for the summary judgment mill." *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998) (internal quotations omitted).

Ms. Schelling does not rebut Pure's claims through the marshaling of admissible evidence to affirmatively establish a genuine issue on the merits of the case. Fed. R. Civ. P. 56(e). The plaintiff instead cites case law for the proposition that a plaintiff's estimation of hours worked is sufficient when the employer has failed to maintain records of hours worked as required by the FLSA. These cases each have a quantum of evidence greater than the evidence presented by Ms. Schelling. She looks specifically to *Doty v. Elias*, 733 F.2d 720 (10th Cir. 1984) (waiters and waitresses reconstructed a calendar-based schedule for Dept. of Labor representatives), *Bledsoe v. Wirtz*, 384 F.2d 767 (10th Cir. 1967) (employee lived at worksite and worked irregular hours 7 days a week), *Riley v. Town of Basin*, 961 F.2d 220,

1992 WL 86717 (10th Cir. 1992) (unpublished opinion) (employee showed additional overtime with time cards and diary entries). *See also Mitchell v. Caldwell*, 249 F.2d 10 (10th Cir. 1957) (employee kept daily record of hours worked), *Schneider v. Landvest Corp.*, 2006 WL 322590 (D. Colo. 2006) (unreported) (evidence showed that employees could not complete assigned work in time reported), *Wirtz v. McClure*, 333 F.2d 45 (10th Cir. 1964) (employee sustained burden by showing schedule required 7 hours 25 minutes, seven days a week of work). Each of these cases presents facts where the plaintiff's estimation of hours worked beyond 40 in a workweek was based, at a minimum, on a calendar based reconstruction of the hours worked. Ms. Schelling has offered no specific evidence in her Response that rebuts Pure's showing that she lacks the quantum of evidence necessary to sustain a claim. She has not specifically shown the court, through any evidence, admissible or otherwise, a single week where she worked more than 40 hours. While she claims that incoming or local telephone calls, work product from her home computer, and other evidence create a genuine issue of material fact as to her unpaid overtime, no admissible evidence is specifically cited to meet the burden imposed by law. Fed. Rule of Civ. P. 56(e) specifically requires that

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or

as otherwise provided in this rule, <u>must set forth specific facts</u> showing that there is a genuine issue for trial.

*Id.* (emphasis added).

Plaintiff's allegations and denials of the adverse party's pleadings are insufficient to meet her burden for these claims. Her entire substantive argument in the Plaintiff's Opposition to Summary Judgment is reproduced below.

> With regards to Plaintiff's home telephone records, it is undisputed Plaintiff also used her personal cell phone until Defendant issued her a "Blackberry." These records are not produced by Defendant. Moreover, the home phone records obviously would only show outgoing long-distance calls. They would not show incoming calls of any kind or calls placed locally by Plaintiff in connection with her work.
>
> The final flaw is that e-mail and phone records only tell part of the story. Plaintiff testified she worked on her home computer and the laptop issued to her by Defendant. The disk containing her work product from her home computer and the laptop are in possession of Defendant. Defendant has not produced or addressed these records to show they negate Plaintiff's testimony.
>
> In summary, there are genuine issues of material fact as to whether Plaintiff worked overtime hours and, if so, the amount of overtime she worked. Summary judgment is inappropriate.

*Id.* at 7-8.

Discovery in this case was due by October 15, 2007. Pure's Motion for Summary Judgment was filed on that date. The Plaintiff's Opposition to the Motion was filed on

16

October 29, 2007, fourteen days after discovery was due. Plaintiff has not filed affidavits asking for additional discovery pursuant to Fed. R. of Civ. P. 56(f), which states:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

*Id.* In short, plaintiff has not asked for additional discovery or stated by proper affidavit to the court why it has not obtained the information necessary to oppose summary judgment. Merely complaining to the Court that the material has not been provided is grossly insufficient to meet this burden.

**Therefore**, the Court finds that plaintiff has not met her burden to show by a fair preponderance of the evidence that she worked in excess of forty hours in any one workweek and was not properly compensated for her overtime work. No genuine issue of material fact exists for her overtime claim, and summary judgment is proper as a matter of law. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's claims for overtime compensation is **GRANTED.**

**Defamation**

Footnote 1 of Plaintiff's Opposition to Summary Judgment states that "Plaintiff

abandons her defamation claim and consents to summary judgment on this claim due to unavailability or unwillingness of witnesses to submit affidavits. No further discussion is necessary and these claims should be and are **DISMISSED**.

**Breach of Contract**

The Court reserves the right to render a decision at a later time on Defendant's Motion for Summary Judgment relating to Ms. Schelling's breach of contract claim. The Court will rule on the motion relating to this claim prior to trial.

**THEREFORE**, this Courts **GRANTS** the Motion for Summary Judgment filed by Pure Energy Services (USA), Inc. Robin L. Schelling's claims against Pure Energy Services (USA), Inc., for FLSA violations and defamation should be and are **DISMISSED**. The Court's decision on summary judgment relating to Breach of Contract claims are **PENDING**.

Dated this 15th day of February, 2008.

*[signature]*

ALAN B. JOHNSON
UNITED STATES DISTRICT JUDGE

19